422 So.2d 1176 (1982)
Doctor Raymond A. SCHWARZ, Doctor Gary J. Danos, and Doctor Albert Barrocas
v.
Doctor Rudolph J. BOURGEOIS and Doctor F.J. Soler.
No. 13052.
Court of Appeal of Louisiana, Fourth Circuit.
September 30, 1982.
Rehearing Denied December 21, 1982.
Robert C. Lowe, Sessions, Fishman, Rosenson, Boisfontaine & Natan, New Orleans, for appellant (Dr. Rudolph J. Bourgeois).
Benjamin E. Loup, New Orleans, for appellant (Dr. Francisco J. Soler).
William J. Oberhelman, Jr., Oberhelman and Champagne, New Orleans, for appellee (Surgical Clinic of East New Orleans).
Harold J. Lamy, Barker, Boudreaux, Lamy, Gardner & Foley, New Orleans, for appellees (Drs. Raymond A. Schwarz and Gary J. Danos).
Herbert J. Garon, Garon, Brener & McNelly, New Orleans, for appellee (Dr. Albert Barrocas).
Before REDMANN, LOBRANO and WARD, JJ.
LOBRANO, Judge.
The present appeal arises out of an action for declaratory judgment commenced by Doctors Raymond A. Schwarz, Gary J. Danos and Albert Barrocas (appellees) to have the District Court interpret Article VI of their partnership agreement. Named as defendants were Doctors Rudolph J. Bourgeois and F.J. Soler, (appellants). The partnership entity itself, in which appellants and appellees are partners, was subsequently joined as a party-plaintiff. The district court ruled in favor of appellees' interpretation and appellants have appealed.
The disputed provision of the partnership agreement is contained in Article VI, and reads as follows:
"No personnel shall be hired or discharged nor shall the pay of any employee be increased or reduced, nor shall any new recurring expenditures in any amount be authorized, nor shall any new non-recurring expenditures in excess of one hundred dollars ($100.00), in any one *1177 transaction be authorized nor shall decisions materially affecting the policies or procedures of the partnership be put into effect, without the consent of the Department Head, or Chief of Surgery. This position will be held jointly by the founding partners for as long as they remain active in this practice. If one of the founding partners should become inactive in the practice due to retirement, permanent total disability or death, the remaining founding partner shall be designated the Department Head. The founding partners may delegate any of these powers for such time as they may determine if such action appears to them desirable.
In matters involving substantial expenditures or material changes in partnership policy, it shall be the right of any partner to request that a vote of the partners be obtained before implementation of these matters by the Department Head. Such voting shall be conducted along the following guidelines:

Pre-Partnership associates 0 votes
1-5 years service as a partner to
partnership 1 vote
5-10 years service as a partner to
partnership 2 votes
10-15 years service as a partner to
partnership 3 votes
15-20 years service as a partner to
partnership 4 votes
20-25 years service as a partner to
partnership 5 votes
Additional credit to founding partner 1 vote

A simple majority vote shall determine the issue.
If both founding partners should become inactive in the practice due to retirement, permanent total disability or death, the position of Department Head will then be declared vacant and a successor chosen by the remaining partners.
It shall be the duty and responsibility of the Department Head to keep the other partners informed of the progress of the partnership's affairs by means of (a) regular meetings of partners held at least one in each calendar month, and (b) periodic financial statements and report."
A chronological review of the events that led to the dispute is as follows:
Dr. Bourgeois and Dr. Schwarz began practicing medicine together as partners in 1965. This partnership was never reduced to writing. All partnership business was conducted by unanimous consent between Dr. Bourgeois and Dr. Schwarz. The partnership practice grew and both men realized that additional help was needed. On June 9, 1975, Dr. Barrocas was hired by the partnership under a written agreement entitled "Pre-partnership Employment Contract". Dr. Barrocas had no voting rights under this agreement.
On December 1, 1975, Dr. Bourgeois suffered a heart attack. Dr. Schwarz and Dr. Barrocas ran the surgical partnership. For approximately seven months, Dr. Bourgeois was inactive in the medical practice. In 1976, when Dr. Bourgeois returned to the practice, he and Dr. Schwarz became increasingly aware of the necessity of taking new partners. Both men had been in partnership together for over ten years and had built up a considerable investment and practice as well as substantial liabilities.
Drafts of many partnership agreements were prepared by Dr. Schwarz and reviewed by both men. The final partnership agreement of which Paragraph VI is in dispute was entered into between Drs. Bourgeois, Schwarz and Barrocas on August 6, 1976. Dr. Danos entered into the same agreement on May 27, 1977, as did Dr. Soler on December 15, 1978.
Over a period of several years conflict and tension arose between Drs. Bourgeois and Schwarz. On April 18, 1980 a meeting of all the partners was conducted. At this meeting, allegedly pursuant to the second paragraph of Article VI, a proposal was made by Dr. Schwarz that he be made sole managing partner of the partnership and that Dr. Bourgeois be removed from this responsibility. All of the partners except for Dr. Bourgeois voted for the proposal. Dr. Bourgeois refused to acquiesce in the vote. Dr. Soler subsequently changed his position, adhering to Dr. Bourgeois' interpretation of Article VI.
Appellees asserted that the second paragraph of Article VI provided for an orderly *1178 and just mechanism for resolving any potential deadlocks arising out of the first paragraph of said Article. When Dr. Bourgeois and Dr. Schwarz voted against each other, that provision of the second paragraph provided the means to break the deadlock. Appellees contend that the second paragraph amends the first paragraph as though the words, "notwithstanding the above" preceded the second paragraph.
Appellants contend that the second paragraph of Article VI must be read in light of and is modified by the provisions of the first paragraph, and that under the terms of the first paragraph no vote can even be taken unless the Department Head/Chief of Surgery (Bourgeois and Schwarz) had first decided to make a "substantial expenditure" or "material change in partnership policy..." In such event, the vote then taken by the other partners could not nullify the action to be taken, but was merely an expression of their opinion.
The case was submitted to the District Court for judgment solely on the pleadings and depositions in the record. Judgment was rendered in favor of plaintiffs-appellees agreeing with their position, and the present appeal followed.
The manifest error rule does not apply to the instant case. The trial court was in no better position to assess credibility than this court as the trial judge relied solely upon the filed pleadings and depositions in finding for appellees. Abu Ali v. Guillory, 271 So.2d 882 (La.App. 4th Cir. 1973).
Louisiana Civil Code Article 1945 provides that legal agreements have the effect of law upon the parties, and that the courts are bound to give legal effect to all such contracts according to the true intent of all the parties. That intent is to be determined by the words of the contract, where the words are clear and explicit and lead to no absurd consequences. In construing a contract to determine the intention of the parties, the agreement as a whole must be considered in order to give effect to all of the provisions therein contained so as to avoid "neutralizing" or "ignoring" any of them or treating them as "surplusage". Each clause of an agreement must be interpreted in relation to each other giving to each that meaning which results from the entire act. LSA C.C. Art. 1955; Reuter v. Reuter's Succession, 19 So.2d 209 (La.1944); Hines v. Dixie Electric Membership Corporation, 391 So.2d 1203 (La.App. 1st Cir. 1980).
Relying upon the contract as a whole appellant argues that the terms of the contract, taken in their entirety, can be reasonably construed in no light other than that no decision of the partnership could be made without the consent of both Drs. Bourgeois and Schwarz. We must agree with the argument of appellants.
It is apparent from the thrust of the agreement that Drs. Bourgeois and Schwarz jointly would reign supreme, as if they were one entity, for as long as they remained active in this practice. No other interpretation can be construed from the record before us. The District Court's entire judgment is based upon the premise that there was at any given time one sole "managing partner". As amply pointed out in appellant's brief, nowhere in the partnership agreement, including the disputed Article VI, can there be found the term "managing partner" or any reference thereto. Additionally, nowhere in the partnership agreement is it contemplated that any one person could act in the capacity of a sole, "managing partner" without the consent of both Dr. Bourgeois and Dr. Schwarz. The phrase "managing partner" was adopted by the court from appellees' pleadings and depositions. The partnership agreement, and Article VI, only refer to a "Department Head or Chief of Surgery", an office which is held jointly by both Drs. Bourgeois and Schwarz "for as long as they remain active in this practice". The language is singular, not plural, which supports appellants' contention that in essence, there was only one manager of the partnership, namely the Department Head/Chief of Surgery. This position, by definition in the partnership agreement, is the joint authority of Drs. *1179 Bourgeois and Schwarz. Nothing else was ever contemplated within the four corners of the agreement. Thus, if follows that if the position was to be held jointly then an implied veto power existed for both.
If Dr. Bourgeois as co-Department Head/Chief of Surgery acted as the manager of the partnership prior to April 18, 1980, it was only with the acquiescence of Dr. Schwarz. If Dr. Schwarz, as a founding partner, wished to delegate his authority for joint control to Dr. Bourgeois, that was clearly within his discretion by the clear and explicit terms of the last sentence of paragraph 1 of Article VI. Dr. Schwarz was free to withdraw his consent at any time. No vote was necessary, none was authorized, and in fact, none was taken. All powers, rights and privileges accorded to each of the men under all the terms of the contract were joint, equal and the same. If Dr. Bourgeois was not elected to manage the partnership by a simple majority vote, it certainly was not the intent that Dr. Schwarz could be.
It is well settled that legal agreements have the force of law between the parties governing its subject matter and courts are duty bound to give legal effect to such agreements. LSA C.C. Art. 1945; Southern States Equipment Co., Inc. v. Jack Legett Company, Inc., 379 So.2d 881 (La.App. 4th Cir.1980).
The conditions of a contract are to be construed as the parties must be supposed to have understood them at the time of its execution. A court is not concerned with the wisdom or folly of the contract. It cannot annul or amend it simply to avoid some supposed hardship arising therefrom. Its duty is confined strictly to the ascertainment of the limits of the rights and obligations of the contracting parties as they have defined them for themselves. In re Stafford, Derbes and Roy, Inc., 173 La. 361, 137 So. 62 (1931).
The judgment of the trial court is clearly erroneous and not supported by the clear provisions of the partnership agreement. The contract does not contemplate that there ever can be a "sole, managing partner" without the consent of the two founding partners comprising the Department Head/Chief of Surgery (Drs. Bourgeois and Schwarz). A change in the composition of the Department Head/Chief of Surgery can only be effected by an Amendment of the partnership agreement itself, which by the very terms of the partnership agreement can only be effected in writing and signed by all of the senior partners. We hold that the partnership agreement is devoid of any such provision establishing that there is or ever can be a "sole managing partner". The management of the partnership affairs is vested in Drs. Bourgeois and Schwarz acting jointly as Department Head/Chief of Surgery each with an implied veto. We find no reason to consider any other issues raised by appellant. For the reasons assigned herein, the judgment of the trial court is reversed.
REVERSED.