228 So.2d 245 (1969)
BUILDERS CENTER, INC., Plaintiff-Appellant,
v.
Joe SMITH, Defendant-Appellee.
No. 7790.
Court of Appeal of Louisiana, First Circuit.
November 17, 1969.
*246 James R. Coxe, III, of Coxe, Coxe & Smith, Baton Rouge, for appellant.
William F. Kline, Jr., Clinton, for appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a suit on an open account for the sum of $4,511.47, representing materials furnished by plaintiff during the construction of a residence for Joe Smith, defendant. The trial judge ruled that defendant was not personally liable to the plaintiff as the latter had failed to file and take advantage of a materialman's lien against the property of the defendant. Plaintiff appeals from this judgment.
The evidence shows that on or about September 30, 1966, defendant entered into a cost plus contract with S & S Contractors, a partnership composed of A. M. Stewart and H. E. Barron, for the construction of a brick veneer home in Jackson, Louisiana. The costs of materials and labor were not to exceed $14,600 and the *247 fee to the contractor was not to exceed $1,400. The first installment of $5,000 was to be paid the contractor when the slab was finished. The second installment of $5,000 was to be paid upon completion of "framing". The balance due under the contract was to be paid after the completion of the residence. The contract was not recorded.
Shortly after the contract was executed, Mr. A. M. Stewart went to plaintiff's place of business and allegedly opened an account in defendant's name. The invoices filed in the record show that the materials were "sold to Joe Smith", Jackson, Louisiana.
Between the dates of October 6, 1966 and December 8, 1966, the contractor obtained from plaintiff materials valued in the amount now sued for.
Defendant made the following payments under the contract to S & S Contractors: $5,000 on October 5, 1966; $4,375 on October 14, 1966; and $625.00 on October 17, 1966. None of these funds were paid on the account with plaintiff. The final payment was never made because there later arose a dispute between defendant and the contractors as to whether or not the contractors had completed the job satisfactorily.
Plaintiff filed a lien against defendant's property which was later ordered cancelled by the court because it was not timely filed.
In the meantime, A. M. Stewart, one of the partners of S & S Contractors petitioned for bankruptcy and listed plaintiff as an unsecured creditor of an open account in the amount of $4,456.00. Mr. Stewart's bankruptcy schedule also showed as a credit item the sum of $6,000, owed to him by defendant for the work done on the latter's home.
Plaintiff now proceeds on the grounds that S & S Contractors was either the agent in fact of the defendant or that the defendant by his own conduct and action has ratified the acts of S & S Contractors who appeared to act on his behalf. Plaintiff bases its case on what it argues are two well established rules of law. The first rule is that one who is notified that a contract has been made for him by a person who purports to have authority to do so is presumed to have ratified the contract unless he promptly repudiates any such authority when is he informed thereof. C.C. Art. 2985, Pitts v. Shubert, 11 La. 286 (La.Sup.Ct., 1837) and Da Ponte v. Ogden et al., 161 La. 378, 108 So. 777 (La.Sup.Ct., 1926). Secondly, when a defendant keeps goods purchased for his account by an unauthorized person, the vendor may, at its option, treat such action as a conversion of the goods or as a ratification of the purchase. Goldman v. Greater Louisiana Corporation, 126 So.2d 771 (4th La.App., 1961). In support of these two contentions plaintiff offered the testimony of Mr. William K. Coxe, its credit and sales manager. Mr. Coxe testified that Mr. A. M. Stewart came to plaintiff's place of business and opened an account in the name of Joe Smith, Jackson, Louisiana. He further stated that a copy of each invoice was mailed to the defendant as well as a monthly statement and that at no time did he receive any notice from defendant that defendant did not consider himself responsible for the account. Mr. Coxe admitted that when the account was opened in the name of defendant he did not know him, made no inquiry as to his financial status, credit rating, ability to pay, or the location of the property upon which the house was to be erected other than to note it was in Jackson, Louisiana. On the other hand, Mr. Coxe admitted that for a number of years, he had known both Mr. Stewart and Mr. Barron and had done business with them.
Mr. Coxe's testimony is in part substantiated by that of Mr. Stewart who stated that he did go to plaintiff's place of business and open the account in defendant's *248 name for the purpose of obtaining materials to construct defendant's home.
Mr. Barron, the other partner of S & S Contractors, testified that the account was set up in the manner above described and this account was to be paid by defendant upon completion of the work.
Plaintiff also relies very heavily on a paragraph in the contract between S & S Contractors and Mr. Smith which reads as follows:
"The Contractor, as agent of the owner shall provide and pay all Materials, Labor specialty and Sub-Contract service, and Supervision, and so and provide all things necessary to accomplish the following:" (Emphasis ours.)
Defendant bases his defense on the fact that he engaged the services of S & S Contractors as an independent contractor for the purpose of constructing his home. He states emphatically that at no time did he designate S & S Contractors as his "agent", authorized S & S Contractors to open an account in his name, or to bind him in any way for material or labor charges other than in compliance with the terms of the contract. He testified that he relied upon the following paragraph in the contract:
"Contractor does hereby agree to perform all work in a Workman like Manner and according to State Building Codes. All premises shall be cleaned on completion of work. Contractor does agree to furnish owner with certified receipts on all bills." (Emphasis ours.)
which required the contractors to furnish him with a receipt of each bill so that he could verify for himself what materials went into his home as this was a cost plus contract. He states that at no time did plaintiff or any representative of plaintiff contact him or ask him whether he had authorized the opening of the account and the charges to him. On two occasions defendant did go to plaintiff's place of business. One time tools were charged to him and on another someone signed his name "Joe Smith" to an invoice. Both of these items were corrected and not charged against the account. He states that he received statements from all of the subcontractors and other furnishers of materials and treated plaintiff in the same manner as he did the others.
Defendant showed that the negotiations between himself and S & S Contractors for the construction of his home took place at the residence of Mrs. Day. Mrs. Day testified that at no time during the course of these discussions was the word "agent" used. Mr. Smith had the contract prepared by a friend of his who was a legal secretary to an attorney in Baton Rouge. Though the contract appears to be in authentic form all parties admitted that it was not executed before the undersigned notary.
Under the above facts, the trial judge concluded that S & S Contractors was not the agent of defendant but was an independent contractor engaged for the express purpose of building defendant's home. He found that S & S Contractors did not have the authority to personally bind defendant for the account it opened at plaintiff's place of business. The trial judge also found as a matter of fact that plaintiff did not rely upon the written contract between defendant and S & S Contractors to open this account but relied on its previous dealings with Mr. Stewart and Mr. Barron. Accordingly, the judge a quo concluded that the plaintiff having failed to avail itself of the privileges afforded under our statutory lien law (LRS 9:4801 et seq.) is now relegated to the position of having to proceed against Mr. Barron, the remaining partner of S & S Contractors. We are in full accord with the trial judge's findings of fact and his application of the law relative thereto.
There is no question but that the principal is bound to execute the agreements contracted by his agent, conformably to the power vested in the agent. C.C. Art. 3021. However, when a dispute arises *249 as to whether or not there is a mandate, the burden of proof of showing that an agent acted within the confines of his authority when dealing with a third person rests with the agent and the third person. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92 (La.Sup. Ct., 1957).
It is quite true that an agency relationship may be impliedly created by the conduct of the principal and the agent. A person by his own inaction may be deemed to have ratified the acts of another who claims to be clothed with a mandate. Under these circumstances, the alleged principal is required to timely repudiate the acts of the one who purported to be his agent. Tri-State Oil Tool Company v. Pioneer Oil and Gas Company, 135 So.2d 297 (4th La. App., 1961).
However, it is also well settled that whoever deals with an agent is put on his guard and it is his duty to inquire into and ascertain the nature and extent of power of the agent. He is required to determine whether or not the contract about to be consummated comes within the agency and will or will not bind the principal. Buckley v. Woodlawn Development Corporation, supra; Bordelon v. Capers, 189 So. 615 (Orl.La.App., 1939); Calhoun v. David Burk Co., 153 So. 568 (2d La.App., 1934).
Upon considering the above stated facts and the law applicable thereto, we must inevitably come to the conclusion that the plaintiff proceeded at its peril when it failed to make due and diligent inquiry under the circumstances attendant to the construction of defendant's home. While plaintiff had no reason to question the ability and integrity of S & S Contractors, it certainly had a duty to make some inquiry about "Joe Smith" if it expected to hold "Joe Smith" personally liable on the account.
Accordingly, for the above and foregoing reasons the judgment of the district court is affirmed at appellant's costs.
Affirmed.